UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VRENI BÜCHEL-RÜEGSEGGER,
as the duly appointed personal representative
of the Estate of Georg Büchel,

        Plaintiff,

        v.        Case No. 06-C-544

JOHN GEORG BÜCHEL,

        Defendant.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On May 3, 2006, Vreni Büchel-Rüegsegger ("Vreni") as the duly appointed personal representative of the estate of her deceased husband, Georg Büchel ("Georg"), filed suit against John Georg Büchel ("John") seeking the return of 200,000 Swiss Francs that Georg allegedly gave to John shortly before his death.

On December 15, 2006, both sides moved for summary judgment and submitted a joint stipulation of facts. On January 26, 2007, John filed a motion to strike certain portions of the plaintiff's reply brief and attached exhibits. The pleadings on these motions are closed and the matters are ready for resolution. The parties have previously consented to the full jurisdiction of a magistrate judge.

### FACTS

Vreni, an adult resident of Switzerland, was married to Georg in 1951 and remained married to him until his death in 2000. (Stip. Fact. 3.) Georg was a citizen of the United States and

Lichtenstein. (Stip. Fact. 5.) Vreni is a citizen the United States and Switzerland. (Stip. Fact. 5.) Georg and Vreni had two children, one of whom is John. (Stip. Fact. 4.) John is a citizen of the United States and has resided in Wisconsin for his entire life. (Stip. Fact. 5.)

Georg and Vreni resided continuously in Wisconsin from prior to their marriage until the late-1980s. (Stip. Fact. 6.) In 1987, Georg and Vreni sold their home in Hartland, Wisconsin and with these proceeds purchased a condominium in Waukesha, Wisconsin. (Stip. Fact. 7.) This condominium was then sold in 1990 and the proceeds deposited into a savings account in Georg's sole name with the State Bank of Lichtenstein. (Stip. Fact. 7.)

In 1988 or 1989, Vreni moved to Switzerland and did not return to the United States. (Stip. Fact. 6.) In 1990, Georg also moved to Switzerland. (Stip. Fact. 6.) Georg died in Switzerland on June 3, 2000. (Stip. Fact. 6.)

Approximately two days before his death, Georg instructed his nephew, an employee of the State Bank of Lichtenstein, to transfer 200,000 Swiss Francs from Georg's account to an account in John's name at the State Bank of Lichtenstein. (Stip. Fact. 8.) The 200,000 Swiss Francs were a gift to John to be used for the benefit of John's family including the education of John's children, who were Georg's only grandchildren. (Stip. Fact. 9.)

On August 23, 2002, Vreni commenced an action in Swiss Circuit Court seeking to recover the 200,000 Swiss Francs. (Stip. Fact. 13.) The court ordered John to return 50,000 Swiss Francs to his sister and 100,000 Swiss Francs to Vreni. (Stip. Fact Ex. A.) Although John retained counsel and participated fully by way of counsel in the Swiss action, the court lacked personal jurisdiction over John and therefore could only declare the rights of the parties but could not order John to return a portion of the money. (Compl. ¶¶ 5-8.) The Swiss Circuit Court judgment was affirmed by a Swiss Appellate Court. (Stip. Fact Ex. B.)

On May 4, 2004, counsel for the plaintiff wrote to John requesting that he remit the 150,000 Swiss Francs in accordance with the judgment of the Swiss Circuit Court. (Stip. Fact. 16.) On May 21, 2004, John replied indicating that he did not intend to return the money because he believed that doing so would be contrary to his father's wishes. (Stip. Fact. 16.) This litigation followed.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

The plaintiff's argument in her motion for summary judgment rests in large part upon the applicability of the Hague Convention on the Law Applicable to Succession of the Estates of Deceased Persons (1989) ("the Convention"), available at http://www.hcch.net/index_en.php?act=conventions.text&cid=62. However, as the defendant points out, the United States is not a signatory to the Convention. Hague Conference on Private International Law, *Convention of 1 August 1989 on the Law Applicable to Succession to the Estates of Deceased Persons, Status Table*, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=62. In fact, only Argentina, Luxembourg, the Netherlands, and Switzerland have signed the Convention and only the Netherlands has ratified it. Id. Thus, the Convention is not in force as an international treaty anywhere in the world. See the Convention, Article 28(1). Therefore, the defendant argues, because the Convention does not apply, he is not bound by the Swiss judgment and thus has no duty to return any portion of the 200,000 Swiss Francs.

It is important to emphasize that this is not an action to enforce the judgment of the Swiss court. The Swiss court lacked personal jurisdiction over the defendant and thus that judgment is not directly enforceable against the defendant as a foreign judgment. This is also not an action to recover a gift of marital property under Wisconsin Statute § 766.70(6), because this action was not commenced within one-year of Vreni learning of the gift. Further, this is not appropriately considered an action under Wisconsin Statute § 766.70(6) because, as explained below, Wisconsin

4

law is inapplicable and thus would have been inapplicable regardless of the timeliness of the plaintiff's action. Rather, this case comes to this court based upon the diversity of the parties and the amount in controversy. In asserting her claims against the defendant, the plaintiff relies upon Wisconsin common law and alleges that the defendant unlawfully converted the 200,000 Swiss Francs by retaining possession following the judgment of the Swiss court.

> "Conversion is often defined as the wrongful exercise of dominion or control over a chattel." [Production Credit Asso. v. Equity Coop Livestock Sales Asso., 82 Wis. 2d 5, 10, N.W.2d 127, 129 (1978).] Conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained. Schara v. Thiede, 58 Wis.2d 489, 497, 206 N.W.2d 129 (1973); Adams v. Maxcy, 214 Wis. 240, 245, 252 N.W. 598 (1934); and Prosser, *Handbook of the Law of Torts* (4th ed. 1971), pp. 83-91. Where, however, there is no wrongful taking and the defendant rightfully comes into possession of the chattels, a demand by the rightful owner and a refusal by the alleged tortfeasor are necessary elements of the tort. Prosser, . . . at 89.

Production Credit Asso. v. Nowatzski, 90 Wis. 2d 344, 353-54, 280 N.W.2d 118, 123 (1979).

The lawfulness of John's possession of the 200,000 Swiss Francs depends upon the lawfulness of Georg's gift to John. In analyzing the lawfulness of Georg's gift, the court must first address the question of whether Swiss or Wisconsin law governs the gift.

In addressing choice of law questions, the Wisconsin Supreme Court has held that "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance," Hunker v. Royal Indem. Co., 57 Wis. 2d. 588, 599, 204 N.W.2d 897, 902 (1973) (quoting Wilcox v. Wilcox, 26 Wis. 2d 617, 634 133 N.W.2d 408, 416 (1965)). In determining whether the nonforum contacts are of greater significance, the Wisconsin Supreme Court has set forth five factors that courts should consider when resolving a question of the applicability of foreign law:

(1) Predictability of results;
(2) Maintenance of interstate and international order;
(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interests; and
(5) Application of the better rule of law.

State Farm Mut. Auto. Ins. Co. v. Gillette, 2002 WI 31, 251 Wis. 2d 561, 588-89, 641 N.W.2d 662, 676 (citing Hunker v. Royal Indem. Co., 57 Wis. 2d 588, 599, 204 N.W.2d 897, 902 (1973)).

To the extent that the first factor, predictability of results, is applicable to the present dispute, this factor it weighs in favor of the application of Swiss law. The question presented is essentially a matter of inheritance law. Georg specifically stated in his will that he wanted the administration of his estate to be governed by Swiss law. There is no reason to believe Georg, Vreni, or John ever expected Wisconsin law to have any relevance to the administration of Georg's estate.

As for the second factor, maintenance of international order, this requires the court to consider the concerns of Wisconsin and Switzerland. Hunker, 57 Wis. 2d at 601, 204 N.W.2d at 903-04 (quoting Conklin v. Horner, 38 Wis. 2d 468, 479, 157 N.W.2d 576, 584 (1968)). This factor also weighs in favor of applying Swiss law. The lawfulness of the gift depends largely upon the law governing the marital relationship between Georg and Vreni. Switzerland has a substantially stronger interest in the marital rights and testamentary intentions of its residents than does Wisconsin over the rights of its gift recipients. Moreover, Wisconsin has little interest over the marital relationship of two of its former residents, particularly when the couple had essentially no ties to Wisconsin for roughly a decade. Further, the fact that Georg explicitly stated in his will that he wanted Swiss law to apply to the distribution of his estate goes to substantially defeat any interest Wisconsin may have. Finally, the fact that Georg and Vreni were residing in Switzerland at the time of the gift, that Vreni is a Swiss citizen, and that the gift came to John in the form of a transfer from one Swiss bank account to another, all weigh in favor of the application of Swiss law.

The third factor, simplification of the judicial task, ordinarily would weigh in favor of applying Wisconsin law. Wisconsin law is far more accessible and familiar to the court than Swiss law. However, in the present case, the manner in which Swiss law would apply is clear. Swiss law as it relates to analyzing the lawfulness of Georg's gift is embodied in the decisions of the Swiss circuit court and court of appeals. The court is presented with absolutely no reason to conclude that this court would reach any other conclusion than the one reached by the Swiss court if it were to analyze anew the issues presented to and resolved by the Swiss court.

The fourth factor is the advancement of the forum government's interests. The only government interest that John presents to this court as a reason why Wisconsin law should apply is that applying Swiss law would undermine that one-year statute of limitations set forth in Wisconsin Statute § 766.70(6). Although the application of a statute of limitations may in many cases represent a significant interest of Wisconsin, such is not the case here. The court finds that any such interest is substantially minimized by the fact that the time between Vreni learning of the gift and this present action did not consist of idleness on the part of Vreni but rather consisted of Vreni's active efforts to obtain the return of the gift, albeit in a court without personal jurisdiction over John. A significant policy reason behind a statute of limitations in a case such as this is to prevent a person from being forced to return a gift after the money is long gone. Such a concern is greatly minimized here because John learned within a reasonable time that the gift was in dispute and he defended himself against Vreni's efforts to recover the gift.

Finally, in regard to the fifth factor, the court is unable to conclude that Wisconsin law represents a better rule of law in this case.

In concluding that the lawfulness of the gift should be governed by Swiss law, the court turns to the undisputed conclusions of law set forth in the Swiss judgment regarding the lawfulness

of Georg's gift. According to the Swiss circuit court judgment, Swiss law considers gifts given to an heir during a testator's life to be part of his estate and must be considered when determining the heir's share of the estate. (Docket No. 25-2 at 12.) An heir's share of the estate is reduced by the amount of the gift; however, if the gift is greater than the heir's share, as is the case here, the heir is obligated to refund to the estate any amount in excess of the heir's share. (Docket No. 25-2 at 12.) This refund to the estate is referred to as a "correction" in the Swiss court decision. As the Swiss court explained,

> [t]he correction is a security device of statutory inheritance law, which has the purpose to treat the heirs equally in particular the offspring because the legislator assumes that the testator wanted that (it also leaves the possibility to expressively advise differently). A larger one time disposal made during a lifetime shall be generally corrected because it disturbs the balance among the heirs.

(Docket No. 25-2 at 12.)

Because all of Georg's marital property passed to Vreni upon Georg's death, (Docket No. 25-2 at 10), the divisible estate consisted of only the gift of 200,000 Swiss Francs. (Docket No. 25-2 at 13.) Therefore, under Swiss law, one-half of this 200,000 belongs to Vreni. (Docket No. 25-2 at 13.) The remaining half would be divided between John and his sister. (Docket No. 25-2 at 13.) Thus, it is clear that the 200,000 Swiss Francs belong to the estate. Because the 50,000 Swiss Francs would then be distributed to John, John's obligation is to return 150,000 Swiss Francs to the estate, which shall then be distributed according to Swiss law to Georg's wife and daughter.

Although the Swiss courts lacked personal jurisdiction over John to order him to repay the 150,000 Swiss Francs, the Swiss judgment is not a nullity. The Swiss court judgment was essentially a probate decision and thus was competent to determine the rights of the estate and the testator's heirs. In doing so, the Swiss court determined that the 200,000 Swiss Francs belonged to the estate. Despite being originally lawfully obtained, John's failure to return the amount in excess

of his share of the estate constitutes conversion under Wisconsin common law. See Production Credit Asso., 90 Wis. 2d at 353-54, 280 N.W.2d 118, 123 (1979) (citing Schara, 58 Wis.2d at 497, 206 N.W.2d 129; Adams, 214 Wis. at 245, 252 N.W. 598; and Prosser, *Handbook of the Law of Torts* (4th ed. 1971), pp. 83-91.) Therefore, the court shall grant the plaintiff's motion for summary judgment.

## MOTION TO STRIKE

The defendant filed a motion to strike an affidavit of plaintiff's counsel and to strike portions of the plaintiff's reply brief. The affidavit and the portions of the plaintiff's reply brief that the defendant seeks to strike played no role in the court's decision in this matter and therefore the defendant's motion to strike shall be denied as moot.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for summary judgment is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion to strike is denied as **moot**.

**IT IS FURTHER ORDERED** that the court shall conduct a telephone status conference on **July 30, 2007** at **8:30 a.m.** to discuss the need for any further proceedings in this matter.

Dated at Milwaukee, Wisconsin this 16th day of July, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge