# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**VRENI BÜCHEL-RÜEGSEGGER,**
as the duly appointed personal representative
of the Estate of Georg Büchel,

        Plaintiff,

v.                              Case No. 06-C-544

**JOHN GEORG BÜCHEL,**

        Defendant.

## ORDER

On May 3, 2006, Vreni Büchel-Rüegsegger ("Vreni") as the duly appointed personal representative of the estate of her deceased husband, Georg Büchel ("Georg"), filed suit against John Georg Büchel ("John") seeking the return of 200,000 Swiss Francs that Georg allegedly gave to John shortly before his death.

On December 15, 2006, both sides moved for summary judgment and submitted a joint stipulation of facts. On January 26, 2007, John filed a motion to strike certain portions of the plaintiff's reply brief and attached exhibits. The parties have previously consented to the full jurisdiction of a magistrate judge.

On July 16, 2007, this court granted the plaintiff's motion for summary judgment and August 1, 2007, the court conducted a status conference to discuss further proceedings in this matter. The court ordered the plaintiff to submit a proposed form of a final judgment by August 15, 2007 and permitted the defendant to file any objections the proposed final judgment by August 24, 2007. The court further permitted the defendant to file a motion for sanctions by August 15, 2007 with a response due no later

than August 24, 2007, and any reply to be filed no later than August 29, 2007. The pleadings on these matters are closed and they are ready for resolution.

## FACTS

Vreni, an adult resident of Switzerland, was married to Georg in 1951 and remained married to him until his death in 2000. (Stip. Fact. 3.) Georg was a citizen of the United States and Lichtenstein. (Stip. Fact. 5.)Vreni is a citizen the United States and Switzerland. (Stip. Fact. 5.) Georg and Vreni had two children, one of whom is John. (Stip. Fact. 4.) John is a citizen of the United States and has resided in Wisconsin for his entire life. (Stip. Fact. 5.)

Georg and Vreni resided continuously in Wisconsin from prior to their marriage until the late-1980s. (Stip. Fact. 6.) In 1987, Georg and Vreni sold their home in Hartland, Wisconsin and with these proceeds purchased a condominium in Waukesha, Wisconsin. (Stip. Fact. 7.) This condominium was then sold in 1990 and the proceeds deposited into a savings account in Georg's sole name with the State Bank of Lichtenstein. (Stip. Fact. 7.)

In 1988 or 1989, Vreni moved to Switzerland and did not return to the United States. (Stip. Fact. 6.) In 1990, Georg also moved to Switzerland. (Stip. Fact. 6.) Georg died in Switzerland on June 3, 2000. (Stip. Fact. 6.)

Approximately two days before his death, Georg instructed his nephew, an employee of the State Bank of Lichtenstein, to transfer 200,000 Swiss Francs from Georg's account to an account in John's name at the State Bank of Lichtenstein. (Stip. Fact. 8.) The 200,000 Swiss Francs were a gift to John to be used for the benefit of John's family including the education of John's children, who were Georg's only grandchildren. (Stip. Fact. 9.)

On August 23, 2002, Vreni commenced an action in Swiss Circuit Court seeking to recover the 200,000 Swiss Francs. (Stip. Fact. 13.) The court ordered John to return 50,000 Swiss Francs to his

sister and 100,000 Swiss Francs to Vreni. (Stip. Fact Ex. A.) Although John retained counsel and participated fully by way of counsel in the Swiss action, the court lacked personal jurisdiction over John and therefore could only declare the rights of the parties but could not order John to return a portion of the money. (Compl. ¶¶ 5-8.) The Swiss Circuit Court judgment was affirmed by a Swiss Appellate Court. (Stip. Fact Ex. B.)

On May 4, 2004, counsel for the plaintiff wrote to John requesting that he remit the 150,000 Swiss Francs in accordance with the judgment of the Swiss Circuit Court. (Stip. Fact. 16.) On May 21, 2004, John replied indicating that he did not intend to return the money because he believed that doing so would be contrary to his father's wishes. (Stip. Fact. 16.) This litigation followed. On July 16, 2007, this court held that the lawfulness of Georg's gift to John depended upon Swiss law and applying Swiss law to the undisputed facts, granted the plaintiff's motion for summary judgment.

## MOTION FOR SANCTIONS

The defendant has now moved for sanctions against the plaintiff for plaintiff counsel's reliance upon the applicability of the Hague Convention on the Law Applicable to Succession of the Estates of Deceased Persons (1989) ("the Convention"), available at http://www.hcch.net/index_en.php?act=conventions.text&cid=62. The plaintiff argued that the Convention was adopted by the United States and as such this court was required to abide by the determination of the Swiss court. (Docket Nos. 24 at 2-4; 31 at 1-5.) However, as the defendant pointed out, (Docket No. 34 at 2-4), the United States is not a signatory to the Convention. Hague Conference on Private International Law, *Convention of 1 August 1989 on the Law Applicable to Succession to the Estates of Deceased Persons, Status Table*, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=62. In fact, only Argentina, Luxembourg, the Netherlands, and Switzerland have signed the Convention and only the Netherlands

-3-
Case 2:06-cv-00544-AEG   Filed 09/04/07   Page 3 of 8   Document 57

has ratified it. Id. Thus, the Convention is not in force as an international treaty anywhere in the world. See the Convention, Article 28(1). The defendant pointed out the inapplicability of the Convention, but only in opposition to the motion to strike did the plaintiff acknowledge the error and apologize to the court. (Docket No. 40 at 5.) In other words, the plaintiff's recognition of the inapplicability of the convention occurred only in response to the defendant's motion to strike portions of the plaintiff's reply in support of the plaintiff's motion for summary judgment.

The plaintiff's reply relied primarily upon the argument that the Convention required the applicability of Swiss law. However, the plaintiff also argued that under the theory of comity, Swiss law should be recognized, and since it was similar to Wisconsin law, there would be no statute of limitations concern because a Swiss mediation was initiated within one year of Vreni learning of the gift. (Docket No. 31 at 6.) The defendant moved to strike the portion of the plaintiff's brief raising the argument regarding the applicability of the Swiss mediation, as well as an affidavit of the plaintiff's attorney. (Docket No. 36.) The defendant argued that references to the Swiss mediation should be stricken for the plaintiff's alleged failure to comply with Federal Rules of Civil Procedure 26(a)(1) and 44.1. In its July 16, 2007 order, the court denied the defendant's motion to strike as moot in light of the fact that the plaintiff's arguments regarding the Swiss mediation played no role in the court's decision.

The defendant has now moved for sanctions pursuant to 28 U.S.C. § 1927 against the plaintiff with respect the plaintiff's arguments regarding the applicability of the Convention and the Swiss mediation. (Docket No. 48.) Section 1927 permits a court to impose sanctions in the form of "the excess costs, expenses, and attorneys' fees reasonably incurred" against an attorney who "unreasonably and vexatiously" "multiplies the proceedings in any case."

The argument regarding the applicability of the Swiss mediation was introduced in the plaintiff's reply. However, the primary argument in the plaintiff's reply was the argument that the Convention was

applicable and required the court to grant summary judgment in favor of the plaintiff; the argument regarding the Swiss mediation was simply offered in an effort to rebut the defendant's argument regarding the applicability of the statute of limitations. There is no indication that the plaintiff introduced the argument regarding the Swiss mediation after realizing that the arguments regarding the Convention were inapplicable. Rather, it appears that the plaintiff's attorney was simply trying to cover her bases with an alternative argument.

Perhaps the plaintiff failed to comply with certain Federal Rules of Civil Procedure in raising the argument regarding the Swiss mediation. However, it is not necessary for this court to resolve whether or not the plaintiff's argument was appropriate, because in the view of this court, even if the argument was not permitted under the Federal Rules, it is not the sort of violation that warrants sanctions under § 1927. The court does not detect even a hint of vexatious intent behind the plaintiff's effort to counter the defendant's argument that the statute of limitations barred the plaintiff's claim by raising the argument regarding the Swiss mediation. In the absence of any evidence that the plaintiff acted vexatiously, the court is unwilling to impose sanctions under § 1927.

As for the plaintiff's repeated reliance upon the Convention and assertions that the Convention was applicable the present case, there is no evidence to suggest that plaintiff's counsel made these arguments with subjective bad faith. However, "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." Dal Pozzo v. Basic Mach. Co., 463 F.3d 609, 614 (7th Cir. 2006) (quoting Riddle & Assocs. P.C. v. Kelly, 414 F.3d 832, 835 (7th Cir. 2005)); see also In re TCI, Ltd., 769 F.2d 441, 445 (7th Cir. 1985) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.") In this court's opinion, plaintiff's counsel was careless in her assertion that the United

States was a signatory to the Convention and the Convention was in force and applicable in this case. Although plaintiff's counsel states her error resulted from a misinterpretation of language rather than a lack of research, the court finds that counsel's error was nonetheless unreasonable.

Nevertheless, the court is unable to conclude that plaintiff's counsel's lack of reasonably diligent research multiplied the proceedings in this case. It is difficult for the court to conclude that if plaintiff's counsel had done effective research that a motion for summary judgment would have been avoided, particularly when, despite the plaintiff's erroneous assertion, the plaintiff nonetheless prevailed. The basis for the motion would have been different, but the court is confident that adequate research would not have avoided a motion for summary judgment in this case. Thus, plaintiff's counsel's inadequate research did not multiply the proceedings in this matter.

In fact, rather than making the defendant's job more difficult, the plaintiff's failure to adequately research the applicability of the Convention substantially simplified the defendant's task in responding to the motion for summary judgment. It is substantially easier for an opponent to rebut an objectively erroneous argument than it is to rebut a thoroughly researched and highly debatable argument. This is particularly true for a defendant when the plaintiff provides objective proof of the inaccuracy of the claim, as the plaintiff did here by filing as an exhibit a copy of the Convention where a date was noticeably absent next to the phrase "Entry into force:." (See Docket No. 24-2 at 1.)

If there was a multiplication of the proceedings in this matter, it was a result of the defendant's seemingly unnecessary motion to strike. The plaintiff raised the argument regarding the Swiss mediation in response to the defendant's arguments that the Swiss law was contrary to Wisconsin public policy. and the statute of limitations. The motion to strike was not necessary in order to criticize the plaintiff's failure to adequately research the applicability of the Convention, since the defendant pointed out in its response to the plaintiff's motion for summary judgment that the Convention was not in force. The

defendant was not compelled or required to file any additional pleading in order to rebut the plaintiff's erroneous claim. Therefore, the sole purpose of the motion to strike was the defendant's attempt to reply to plaintiff's mention of the Swiss mediation.

The proceedings were not multiplied by plaintiff's counsel's inadequate research, nor the raising of the Swiss mediation in plaintiff's reply. Therefore, the court shall deny defendant's motion for sanctions. Even if the court were to find that the counsel for the plaintiff violated certain of the Federal Rules of Civil Procedure in introducing the arguments relating to the Swiss mediation, the court does not find that plaintiff's counsel was objectively unreasonable in rasing these arguments or acted with vexatious intent. As for plaintiff's counsel's erroneous argument regarding the applicability of the Convention, the court finds that counsel's lack of proper research was objectively unreasonable. However, the court is unable to conclude that this lack of research multiplied the proceedings in this matter and therefore sanctions pursuant to § 1927 are not appropriate.

## FORM OF JUDGMENT

The defendant does not object to the plaintiff's proposed form of judgment except with respect to the date that the conversion occurred and thus the date from which pre-judgment interest should begin to collect. The plaintiff argues that the conversion occurred on August 23, 2002, the date that the plaintiff initiated the Swiss action. The defendant argues that the conversion did not occur until May 21, 2004 when the defendant refused to return the 150,000 Swiss francs following the judgment of the Swiss court.

The court agrees with the defendant and shall enter judgment assessing interest from the May 21, 2004, the date that the defendant refused to return the 150,000 Swiss francs. It is again important to note that this present action is an action for conversion under Wisconsin law. If the Swiss court had personal jurisdiction over the defendant and the present action was merely an action to enforce that

judgment, then it may be appropriate to assess interest from the date the Swiss action was initiated. However, the Swiss action merely determined the lawfulness of the ownership; it was not until the plaintiff requested repayment following the Swiss court's determination that conversion occurred.

As the court noted in its earlier decision:

> "Conversion is often defined as the wrongful exercise of dominion or control over a chattel." [Production Credit Asso. v. Equity Coop Livestock Sales Asso., 82 Wis. 2d 5, 10, N.W.2d 127, 129 (1978).] Conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained. Schara v. Thiede, 58 Wis.2d 489, 497, 206 N.W.2d 129 (1973); Adams v. Maxcy, 214 Wis. 240, 245, 252 N.W. 598 (1934); and Prosser, *Handbook of the Law of Torts* (4th ed. 1971), pp. 83-91. Where, however, there is no wrongful taking and the defendant rightfully comes into possession of the chattels, a demand by the rightful owner and a refusal by the alleged tortfeasor are necessary elements of the tort. Prosser, . . . at 89.

Production Credit Asso. v. Nowatzski, 90 Wis. 2d 344, 353-54, 280 N.W.2d 118, 123 (1979).

Thus, the tort was not committed until the defendant refused the rightful owner's demand for the return of the property. It is undisputed that the defendant's refusal came on May 21, 2004 and therefore this shall be the date that pre-judgment interest shall accumulate at the rate of 5.00% pursuant to Wisconsin Statute § 138.04.

**IT IS THEREFORE ORDERED** that the defendant's motion for sanctions, (Docket No. 48), is **denied**.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2007.

BY THE COURT:

s/AARON E. GOODSTEIN
United States Magistrate Judge